The next case is Carol McGachey v. Air Force, 2009-3304. Mr. Mangum, you're having a busy week. Good morning, Your Honor. I'm back. May it please the Court, my name is Glenn Mangum and I represent the petitioner Carol McGachey. There's two main points that I'd like to make this morning before Your Honors. The first is that the Administrative Judge's determination that Carol McGachey's removal, under all the circumstances of this case, was nonetheless reasonable. We contend that that decision was arbitrary, capricious, and not in accordance with the law. In fact, I would even go so far as to say that even if the Court finds that there was substantial evidence to support the two sustained charges, that the penalty of removal is still not reasonable under the circumstances of this case. You're saying it wasn't reasonable or it's not in accordance with the guidelines? It's beyond the bounds of reasonableness because it is not in accordance with the guidelines. In addition, Your Honors, we believe that the Air Force's allegations of misconduct by Ms. McGachey, all three of them, were not supported by substantial evidence, especially the allegation that was rejected by the Administrative Judge, but also the allegation that Ms. McGachey misused a government computer. There were three charges. I think the Court is aware of what the charges were. The first charge that was made chronologically was failing to follow the proper leave procedure, resulting in being charged with AWOL. Our position in regard to that issue— That was not found to be substantiated. There are only two charges left, right? That's correct, Your Honor. So why argue about the first one? The first charge that was substantiated was, chronologically, the charge that she failed to follow a proper leave procedure and therefore was charged with AWOL. Oh, that's right. AWOL. In that sense, the transgression of Ms. McGachey in regard to the unit policy was that instead of calling into the unit and speaking to the unit coordinator and advising the unit coordinator that she was ill and that she would not be able to report to work for that day, the unit policy, according to the interpretation of the unit policy by Captain Tina Allen, who was the proposing official, and Major Poole, who was the deciding official, was that she also had to go one step further and call her supervisor, Captain Allen, at home at 4 o'clock in the morning. Ms. McGachey's position was that the collective bargaining agreement did not require her to do that and instead allowed her to contact the person who was acting in lieu of a supervisor and who was on duty at that time. If you look at the collective bargaining agreement, the collective bargaining agreement actually states in Section 9, I believe it is, that if the supervisor is not on duty, the employee may make his or her leave request to the person designated to act in the supervisor's place. And at the time Ms. McGachey called the unit, her supervisor was not on duty because the supervisor, as designated by Major Poole in her unit leave policy, was in fact Captain Allen. So Captain Allen was not on duty. Ms. McGachey spoke to the person designated to act in the supervisor's place, that is, the unit coordinator. And she made her leave request to that person and the unit coordinator declined to approve the request. Therefore, even though there is no question that she was ill and unable to report to work that day and there is no dispute that she was calling in to report her absence that day, the Air Force's determination was that she failed to follow the proper leave procedures and was not just absent but absent without leave. Now, the nurse that she reached, I guess who was Ms. Marques de la Plata, was, she said, and I don't know if you take issue with this, but I take it that this is found, as found by the Administrative Judge, that when Ms. McGachey called, she, Ms. Marques de la Plata, told Ms. McGachey that she should call the element later and that Ms. McGachey said she didn't have to. That was the exchange that was in the record, Your Honor. And she did not, at that point, leave the telephone, the home telephone number since she assumed, I take it, that everybody knew what her home number was. Well, the record reflected that she didn't leave her home telephone number for the supervisor to contact her because she said that there is an on-call list that has all the nurses' names and all the telephone numbers for all the nurses who may be called to come into work that day. And so her position was that the collective bargaining agreement did not require her to call her element leader at home, her immediate supervisor at home, at 4 o'clock in the morning if she was ill, had just taken medication for her migraine headaches, and was about to pass out. And, in fact, that's part of the argument that we've made to this Court, and that is that even if she should have, under the unit policy and or under the collective bargaining agreement, called her immediate supervisor to report her absence, that she was incapacitated from doing so. Well, she had just made a call to Ms. de la Plata, and so she wasn't incapacitated at that point. That's true, Your Honor. So, presumably, she could have put the phone down and then made another call. That's true, Your Honor. And she decided – frankly, the way this strikes me is that it looks like she has a bit of a stubborn streak. In some settings, that's a good thing. In some settings, it's not such a good thing. And sometimes in bureaucracies, it's a really bad thing. I understand, Your Honor. And she decided, doggone it, I've made my call, and even though Ms. de la Plata tells me that the right procedure is to call the element – what is it, the element leader? That's right. I'm not going to do it. You're correct, Judge. I'm not disputing that. I think there was an element of stubbornness in it, but I thought there was also an element of, hey, I'm suffering. I've got severe migraine headaches. I've just taken my medication. And I'm not able to go through all these hoops that you want me to jump through in order to obtain leave for a legitimate illness. But the LJ did find that either under the unit policy or CBA policy, she did not follow either one. She did find that, Judge, and I disagree with that finding. I think there was no substantial evidence to support the finding that the collective bargaining agreement made the same requirement to call the immediate supervisor, as did the unit policy. I think the collective bargaining agreement, as I was trying to point out earlier, said if you can't reach your immediate supervisor at the time you're supposed to report to duty, you speak to the person who's designated to act in that person's place. Is that a legal determination or a factual determination in the interpretation of the CBA? I think it was a factual determination, Judge. So we can't reinterpret that. Well, the finding made by the ALJ at this point, then, you're saying is correct, but we can't find it. There has to be some substantial evidence to support it, Judge. You're saying it's clearly erroneous. I don't think there's any evidence that a reasonable mind would accept as adequate to support the conclusion that the CBA does require the ill employee to report to his immediate supervisor. Well, if we look at it as a legal interpretation of the CBA, wouldn't that be a reversible error at that point, rather than determining a factual determination of an error? Yes, Your Honor. And I think it's also a violation of the collective bargaining agreement. And this was the point that Ms. McGatchey was trying to make when she refused or declined to call Captain Allen at home, was the collective bargaining agreement does not require. You are asking me to do something that is inconsistent with collective bargaining. But at that point, the CBA policy had not been implemented, as I understand. At that point. At that point, when she made the call, the CBA policy of calling in had not been implemented as such. No, the CBA was in place. The CBA was in place. The unit policy came after the CBA, and according to the testimony at the hearing, was an attempt to modify or revise the requirements under the CBA. In fact, the evidence at the hearing was that the Air Force resisted the application of the CBA policy in almost every instance. And continued the unit policy as it was. That's correct. I take it that, and I couldn't find it, I thought I read this in the briefing, I just couldn't put my finger on it, but help me out. Sure. That the evidence from the agency is that the agency would have, in their view, taken the same disciplinary steps with respect to any of the three offenses that were charged? The way I understood Major Poole's testimony, who was the deciding official, Judge, was that she would have decided to remove Ms. McGatchy for any of the three offenses. Even though it appeared to me, and I think it appeared to everyone at the hearing, that the driving force for the removal proposal was the allegation that she had refused to carry out the duties assigned to her, or failed to carry out the duties assigned to her. The patient issue. That's correct, Judge. And that was the one that was not sustained. That was the one that the A.J. rejected. But the A.J. seems to have embraced the agency's view that, I mean, this all goes back, as you well know, to the whole question of what either the Board or we do with a case in which less than all the charges are sustained. Particularly when the most serious charge, as we assume it to be, is not sustained. Whether you send it back for the Board to reassess or for even the agency to determine whether there has been a change in what they would regard as the appropriate punishment. But the agency does seem to be on record, as I understand the record, to say that any of these three would have been sufficient, even the computer use charge. That's my understanding, as well. Yeah. Mr. Macon will testify, too, also, Judge. Were they all charged as 20s, each one of them, instead of the different types of causes of action that would have been able to be brought? I'm not familiar with what you're referring to, Judge. Well, the insubordination, defiance of authority, and refusal to comply with proper orders and wanton disregard directive of insolence, each one of the charges were brought under that particular aspect of it, even though one of them was AWOL and the other was misuse of government property. Are you talking about the table of penalties? Yes, the table of penalties. Yes. No, they weren't all. As a matter of fact, it wasn't clear what reference was being made by Major Poole to the table of penalties, if any. As a matter of fact, when I questioned her on her explanation of the Douglas factors at the hearing, she wasn't really able to articulate which infraction under the table of disciplinary penalties was applicable to the particular facts that were being alleged as a basis for removal. I asked her if section 4 of the table of penalties, which was unauthorized absence of more than 8 hours, was applicable. Item 5, which was failure to request leave according to established procedures. And then item 21, which was loss of or damage to unauthorized use of property. And in each of those instances, as you'll see, Your Honors, the second offense, which would be the only applicable offense to the failure to properly request leave procedures or AWOL, has a maximum penalty of suspension rather than removal. And under the loss of damage to or unauthorized use or destruction of property, first offense is reprimand. So even if you were to accumulate those offenses and assess a cumulative penalty, it still doesn't seem to me that removal would be an appropriate penalty. Where did the reference to cause of action or offense number 20 come in? Because that was what I understood the same. I had the same understanding as Judge Gallarza that the AWOL part of the case was characterized as a 20, which, of course, puts it into the category in which removal is available, as opposed to the AWOL, which has a smaller, has a lower range of penalties, I think. I don't know where the reference to 20 came in. But at some point, the agency, if I recall correctly, did associate that conduct with the 20 characterization. In subordination. Right. I just can't remember where it was. Here's how I understand that happened, Judge. The charge that was alleged in the Notice of Proposed Removal was failure to carry out assigned duties. But it was inflated into a charge of insubordination, which would have required, and I think in the AHA's review, required the agency to prove that Ms. McGatchy was given a direct order by someone with authority to give that order, and that she refused to respond to that order. And that wasn't what the evidence showed at the hearing. You've consumed your time, Mr. Mangum, but because we've asked your questions, we'll give you back two minutes for rebuttal. Thank you. Mr. Shunk. Excuse me. When you do sit, take a look at the appendix pages A235 and A236, which refers to the penalty guideline number 20. Yes, sir. Mr. Shunk, let me ask you right off the bat about this number 20, insubordinate defiance of authority, which permits within a range up to removal. But that seemingly was the offense that was not upheld. Unauthorized use of authority and absences, those did not provide for removal. So why shouldn't the penalty be reversed as not being within the guidelines for the sustained charges? For two primary reasons, Your Honor. First, because the penalty is reasonable and it is consistent with the guidelines. And secondly, it need only be consistent with the guidelines. It doesn't need to fit perfectly within the guidelines in accordance with this court. In other words, the guidelines are only guidelines. And if the deciding officer says, well, I think she should be removed, then irrespective of the guidelines, she can be removed. In accordance with FARO, the guidelines are guidelines. They are not binding on the agency. What's important, then, is whether the penalty is consistent with the guidelines. And it's important that that major pool did, in fact, reference offense number 20. And that reference was with respect to all three charges, I take it? Yes, Your Honor. I mean, that seems, in the language of criminal law, to be a bit of overcharging. Particularly, I mean, it's a little hard to see how the computer charge, for example, could be charged as a 20, unless you were deciding that you just wanted to lay on the heaviest charge you could. Respectfully, that's perhaps not right, Your Honor. And if someone, like Ms. McGatchey here, were to intentionally violate a policy against government use of property, such as a computer, and do so knowingly and intentionally, that's a disregard for procedures, and that's a number 20. So any offense which is done knowing that it's an offense, no matter how minor, would be a 20, in your view? In other words, I know that I'm not supposed to bring coffee back to the office. There's some silly policy that says you're not supposed to bring coffee back to the office. And I'm just, I bring my coffee back to the office. That becomes a 20 because I know about the policy. It's a very extreme example, perhaps. Of course. But I think your position sounds like it invites an extreme application. But it's not our position. It's the agency's guidelines.  But then the agency, well, but that's the question. Is that what the agency is telling us? Or is that just the agency taking advantage of the opportunity to convert any knowing violation of even things that are pretty small and carry very low penalties into a 20, which carries a first offense of removal? The agency has decided, and for good reason, that they're refusal to comply with proper orders, which is the text in the guidelines. Are you focusing on the strong language of 20? Defiance, refusal, wanton, which would seem not to cover the coffee example. But these are strong words. And so you're saying if the circumstances justify the application of those strong, to that strong language, they could apply to otherwise minor incidents? Exactly. And it could apply to any type of infraction, if it were intentional disregard of the rules, which is what happened here. And it happened here according to the deciding official. And that's also what the administrative judge found, that Ms. McGatchy was on notice of specific instructions regarding leave policies and intentionally disregarded them. What if the guidelines specifically allow for loss or damage to unauthorized use of destruction of government property? The first one is reprimand. That was a charge that was made. And the second charge, utilizing government computer view unauthorized union documentation, violated the AFI 36-704 cause of action 20. I don't quite understand why there's a 20 type of a cause of action. That's not insubordination. That's not otherwise. So why would the agency then, when it does have the ability to charge her with loss or damage to government property, the first cause of action under that would be a reprimand? I don't quite understand the balancing factors that were taken into account, except maybe for union activities. Well, that allegation was not upheld by the administrative judge. I understand that. I understand that, but it smells like it to me. So I'm still wondering why the charge was made for all 320s instead of going selectively to what the charges would be under the table. Because of the administrative, the deciding official's opinion, Your Honor, that Ms. McGatchy was aware of these policies, that she knew that she couldn't use the word computer for other purposes and that she intentionally did it, and that she knew that she had to contact a supervisor to request leave, because the policy specifically said do not contact a unit coordinator, yet Ms. McGatchy contacted only a unit coordinator. Not only that, Ms. McGatchy told the unit coordinator that I'm not going to follow the policies. I don't need to. All I'm going to do is call you in direct, direct contradiction of the rules. Well, was that in compliance with the CBA? Ms. McGatchy violated both the CBA and the unit policy. To the extent that they may deviate in some language, they have the same practical effect here. Ms. McGatchy was required to request leave from a supervisor, and now that is the language of the agency policy. Or in accordance with the CBA, similarly to a supervisor, the only difference is the CBA provides the supervisor is not, quote, on duty, close quote, and you have to contact a designated alternate. The unit policy requires you to contact the other element supervisor if your supervisor is, quote, unquote, not available. That's the only difference here. And here, the evidence before the administrative judge, and this is important, page 706 through 707, is that there was an element leader on duty, and that element leader was Captain Lacy. So regardless of which policy. I'm still puzzled as to the cause of action that could have very well fit her actions, like five, failure to request leave according to established procedures, or failure to honor a valid denial of a leave request. That's a reprimand of five days suspension. It's not removal. Unauthorized absence of more than eight hours. That's a reprimand of more than five days of suspension for the first offense. But everything falls under the catch-all clause of insubordination, defiance. I still don't quite understand how that's a basket provision for all of the actions that were taken, even though she might have been insolent or stubborn or otherwise. It's not a catch-all for every offense. It's a catch-all for Ms. McGadget. Well, it seemed to be a catch-all for everything. It's a catch-all for every knowing offense, it sounds like, is your position. The only way you would be able to say, I take it, that 20 wouldn't apply to every possible offense, every possible violation, including the coffee violation, would be to say that 20 applies, does not apply, if you don't happen to know of the policy in question. Or if it was inadvertent. Or even negligent. Or even a good faith mistake. That's not the case here. Well, those are all encompassed within the other cases other than knowing the policy. I mean, it does seem to be your position that a knowing violation, no matter how minuscule the infringement, is enough to constitute a 20, which does seem, at least facially, pretty hard to square with the language that Judge Lurie read about defiance, insubordination, wanton disregard. Those are strong words. Frankly, particularly, maybe it's applied to the AWOL, that's one thing, but it's applied to the computer violation. That sounds like a stretch to me. Doesn't that strike you as a stretch? I guess your job requires you to say no, but it does to me. No, Your Honor, regardless of Judge Lurie. The reason is because this is a hospital that depends upon efficient functioning and rule following of its employees. Now, Major Poole spoke about this at length in her discussion of the Douglas Factors, that is how important it is for all the nurses to follow the instructions of their supervisors. And it's not for nurses to question which instructions are more important than others or which they can disregard. If you're on notice of a policy in this hospital, you have to follow it. There are lives literally at stake, perhaps not with every breach of every policy, but that's not for the nurses to determine. They have to follow the procedures of the agency, which is what Ms. McGashy intentionally didn't do here, certainly in regard to the leave procedures. They were established. They required her to contact the element leader at home. These allegations that it was 4 o'clock in the morning are simply of no moment. There was testimony in the record that established that nurses were expected to call element leaders at home at all hours of the day, and the nurses did that. And that makes sense as well because this is a hospital. And unit coordinators don't have the ability to call other nurses and have someone take a shift. Now, I take it that, I'm not sure I understood the hierarchy within the hospital well enough to understand, to know the answer to this question, but I take it that Ms. Marquez de la Plata, whatever her status, she was not technically a supervisor, as that term is used, of Ms. McGashy? That's correct, Your Honor. Yeah, she just happens to be the nurse on duty at the moment? Yes, Your Honor. So when the call was made, well, go ahead. I apologize. Not on duty, Your Honor. She was working at the moment. The term on duty would refer to the supervisor who was on duty. No, no, I understand, but I was using the term just colloquially, meaning that she was at work. She just happened to be the person that picked up the phone, right? What I'm trying to go with this is, did Ms. McGashy, by virtue of contacting Ms. Marquez de la Plata, contact somebody up the chain of command, or did she just contact somebody who picked up the phone? Not up the chain, Your Honor. Also not someone who was just on the phone. The unit coordinator is assigned on a daily basis to assign nurses to patients, so there's some type of administrative responsibilities. But in terms of the hierarchy, it is a colleague of Ms. McGashy. That is, each nurse, I believe, has the potential to do this without any promotion or anything of that nature. It's simply a different job responsibility of the unit coordinator when the unit coordinator has that job. When the unit coordinator does not have that job, the unit coordinator is simply a nurse, as was Ms. McGashy. Okay. All right. I think I'm sure. So that is the failure to follow procedures against either policy. Ms. McGashy violated the policies she did so intentionally. Substantial evidence supports that finding. Similarly, there is substantial evidence to support the finding as to the misuse of the government computer. Specifically, there is the computer printout on page 217 that indicates that Ms. McGashy accessed, stored, and used her government computer for union purposes on the day in question. That's charged also supported by substantial evidence. The question of reasonableness, what hasn't come up is that Ms. McGashy also has a prior work history. She has been charged and found able on one other occasion. Within, I believe, one year of this offense, Ms. McGashy was found to be sleeping on duty and for failing to follow duties as a result. This is not an individual with a clean disciplinary record who has for the first time violated an offense. Ms. McGashy has demonstrated a repeated inability and willingness to not follow the agency's procedures. Accordingly, that renders the deciding official's decision reasonable and not totally informative, nor was the administrative judge's determination in affirming that decision. Were those taken into account? They were. Those prior? Yes, Your Honor. I asked your opposing counsel. I'm sorry, Judge Geiser, were you finished? Go ahead. I asked your opposing counsel about the evidence regarding the agencies taking the position that any one of these offenses would have been sufficient to sustain the charge as a way of obviating the need for a remand, etc. What was the context of that? Was that Major Poole's testimony? Because I just haven't been able to put my finger on it. It's page 497. 497 of the appendix? Yes. Great. Thank you. Thank you, Mr. Shrunk. Mr. Randall has two minutes left. Thank you, Your Honor. Just briefly, Judge Piazza, I did confirm your reference to 8235 and 8236, and you're correct that each three charges in the discussion of the Douglas factors was characterized as a 20 violation, which seems inconsistent to me with the notice of proposed removal and the characterization of the offenses or the misconduct that Ms. McGachey was charged with in the notice of proposed removal. I think that the court has recognized that characterizing each of these offenses as an act of insubordination or defiance of authority is a stretch of the prosecuting authority that the agency had and doesn't seem to be within the bounds of reasonableness in this case. I think you have a pretty good case with respect to that question and with respect to the computer, unless I don't appreciate some of the subtleties of the evidence. I think you have a less strong case there with respect to the AWOL, and I'd like you to address that, because in the AWOL there does seem to have been an element at least of willful defiance. She was told what she had to do, and she basically said no. Well, it was willful in the sense that she says, I don't believe that the CBA requires me to do that. I don't believe that any of the offenses that she was charged with or that were sustained against her were intentional in the sense that she knew that her course of conduct was going to be a violation of policy or practice or procedure or Air Force directive or Air Force instruction. In the case of the use of the government computer, she believed that her use of the government computer was authorized by the collective bargaining agreement, and she has substantial support in the collective bargaining agreement for that argument. In the case of the AWOL violation, she believed that the collective bargaining agreement did not require her to call Captain Allen at home at 4 o'clock in the morning. She believed that the unit coordinator who was on duty receiving calls of people who were not going to be able to report for work was the person designated to act in her supervisor's place, so she acted on the basis of that belief. If there's nothing further, Your Honor, that's all I have. Thank you. Mr. Mangum, you may take the case under advisement.